UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RAYZA CARBALLO**

    **Plaintiff,**

**CIVIL ACTION NO.**

v.

**BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE**

    **Defendant.**

## COMPLAINT

COMES NOW Plaintiff Rayza Carballo, by and through undersigned counsel, to file this Complaint against Defendant, Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, asserting claims arising under the Equal Pay Act, 29 U.S.C. § 206(d),[1] and respectfully states the following:

**PRELIMINARY STATEMENT**

1. Plaintiff, Rayza Carballo (hereafter, "Plaintiff" or "Ms. Carballo"), is a longtime employee of LSU Health Sciences Center - New Orleans ("LSUHSC-New Orleans"), where she has been employed since 2006.

2. Between 2006 and 2020, Ms. Carballo's title was Assistant Director of Administrative

---

[1] On March 17, 2022, Ms. Carballo filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging gender discrimination under Title VII of the Civil Rights Act of 1964. Ms. Carballo intends to amend this Complaint to incorporate those claims promptly after her receipt of the Notice of Right to Sue.

Affairs for the Department of Property & Facilities, a role in which her duties included responsibility as the "Fiscal Dean" of the Department of Property & Facilities. Beginning in January 2020, Ms. Carballo was assigned and assumed 95% of the former duties of retiring LSUHSC-New Orleans employee Matthew Gedge on top of her former duties held throughout her employment. Ms. Carballo was promoted in December 2020 to the position of Director of Administration and Disaster Claims and continues to serve in that position.

3. Throughout her employment with LSUHSC-New Orleans, including the time period relevant for purposes of this Complaint (beginning in March 2019 and through the present), Ms. Carballo has been paid substantially less than comparable male employees, including both the male fiscal deans of LSUHSC-New Orleans and Mr. Gedge.

4. In this case, Ms. Carballo seeks to enforce her rights under the Equal Pay Act. 29 U.S.C. § 206(d).

**PARTIES**

5. Plaintiff, Rayza Carballo (hereinafter, "Plaintiff" or "Ms. Carballo"), is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana.

6. Defendant the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU") is a constitutionally-created body with its principal place of business located at 3810 West Lakeshore Drive, Baton Rouge, Louisiana 70808 and charged with overseeing and managing the "LSU" institutions across the state, with the legal capacity to sue and to be sued.

7. Among the campuses LSU operates, manages, and controls is LSUHSC-New Orleans,

where LSU's schools of medicine, dentistry, nursing, public health, graduate studies, and allied health professions are located.

8. LSU is an employer with over 500 employees engaged in commerce within the meaning of the Equal Pay Act.

## JURISDICTION AND VENUE

9. This Court has personal jurisdiction over Plaintiff and Defendant.

10. This Court has jurisdiction over this proceeding under 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law.

11. Venue is proper in the Eastern District of Louisiana, as a substantial part of the events or omissions giving rise to the claim occurred in this District or otherwise in accordance with 28 U.S.C. § 1391.

## FACTS

### *Background and Ms. Carballo's Work and Compensation at LSUHSC-New Orleans through January 2020*

12. In 2006, Ms. Carballo began her work at LSUHSC-New Orleans as the Assistant Director of Administrative Affairs for the department of Property & Facilities, one of the largest departments at LSUHSC-New Orleans.

13. In her role as the Assistant Director of Administrative Affairs for the department of Property & Facilities, Ms. Carballo was responsible for developing and directing the department's financial programs, including the department's continuing budget, projecting expenditures and revenues for short and long term forecasts, preparing business plans, and reviewing and approving all financial expenditures for the department; developing and directing the department's administrative program, including providing sound and timely advice to the Associate Vice Chancellor and

3

relieving him of all administrative matters; directing the work of the administrative business staff, including payroll processing for approximately 170 personnel; and managing the development of legal agreements.

14. Ms. Carballo's salary at her time of hire was $68,000.

15. In Ms. Carballo's role as the Assistant Director of Administrative Affairs for the Department of Property & Facilities, her duties included responsibility as the "Fiscal Dean" of the Department of Property & Facilities.

16. According to Chancellor's Memorandum CM-21 – Financial Management Responsibility, the fiscal dean position is "the senior accounting official for the administrative area responsible for the overall management of the financial resources of the school or administrative area."

17. In addition to Ms. Carballo, there are four other fiscal deans within LSUHSC-New Orleans: Ben Lousteau, Associate Dean of Fiscal Affairs for the medical school (who is now also serving as the Interim Vice Chancellor for Administration and Finance); Anthony Divincenti, Associate Dean of Fiscal Affairs for the dental school; Geremie Loupe, Assistant Dean of Business Affairs for the nursing school; and Joseph Lasalle, Assistant Dean of the school of allied health.

18. Ms. Carballo's duties prior to Matt Gedge's retirement, in her role as Assistant Director of Administrative Affairs for the Department of Property & Facilities, were equivalent to those of the other fiscal deans. For example, Ms. Carballo had responsibility for (a) financial oversight of the department, including development and management of the department's annual budget, oversight of all fiscal affairs of the department, responsibility for advising the Dean or Associate Vice Chancellor for review and

4

general compliance with State, Federal, and University regulations and departmental administrative matters and interacting with Department heads or Directors and business managers to implement developed budgets and fund management; (b) administrative oversight of the department, including responsibility for oversight and processing of administrative actions which must be routed through the Dean's office or office of the Associate Vice Chancellor for review and general compliance with State, Federal and University regulations, providing advice to the Dean or Associate Vice Chancellor on departmental administrative matters, and interacting with Department Heads or Directors and business managers to implement developed administrative programs and projects; (c) interacting and negotiating with FEMA, GOHSEP and other outside agencies and entities to defend grant, insurance, and legal claims on behalf of the University; (d) contracts management and the negotiation and development of contracts; (e) conducting and directing special projects and representing the Department on committees and task forces; and (f) the direct supervision of an administrative team.

19. In 2015, LSUHSC-New Orleans approved a 23-step pay grade structure.

20. In 2017, LSUHSC-New Orleans performed an Unclassified Employee Market Study to assess the equity of its salary structure (the "Study").[2]

21. In or around mid-July 2017, after the Study was presented at LSUHSC-New Orleans,

---

[2] In the years following the Study by LSUHSC-New Orleans, three other women in leadership roles filed suits against LSUHSC-New Orleans asserting claims of intentional pay discrimination. *See Tina Gunaldo v. Bd. of Supervisors of Louisiana State University and Agricultural and Mechanical College, et. al.,* U.S. District Court, E.D. La. Case No. 2:20-cv-00154, and *Katherine Muslow and Meredith Cunningham v. Bd. of Supervisors of Louisiana State University and Agricultural and Mechanical College, et. al.,* E.D. La. Case No. 2:19-cv-11793.

Ms. Carballo attended a meeting in the office of John Ball, the Associate Vice Chancellor. In attendance at that meeting were Mr. Ball, Rosalynn Martin (then the Director of Human Resources Management), and Sara Schexnayder (Compensation Manager).

22. During the July 2017 meeting, Ms. Carballo and Mr. Ball questioned Ms. Schexnayder and Ms. Martin regarding the methodology used in the Study. In addition, Ms. Carballo asked how she and her position were evaluated relative to the Fiscal Deans. Ms. Schexnayder responded unambivalently that Ms. Carballo was in the same general category as the Fiscal Deans.

23. Nonetheless, in Ms. Carballo's prior position of Assistant Director of Administrative Affairs for the Department of Property & Facilities, prior to her assumption of Mr. Gedge's responsibilities, she consistently was paid less than all of the male fiscal deans at LSUHSC-New Orleans.

24. For example, in the spring of 2019, Ms. Carballo's annual salary was $92,120.04, while, based on information provided by LSU in response to a public records request, the male fiscal deans' annual salaries in the spring of 2019 were as follows: Ben Lousteau, $212,014.08; Anthony Divincenti, $172,010.04; Geremie Loupe, $116,508.00; and Joe Lasalle, $109,872.00.

*Ms. Carballo's Work and Compensation
from January 2020 through the Present*

25. In an email dated September 23, 2019, John Harman, then the Vice Chancellor of Administration and Finance (VCAF), assigned to Ms. Carballo effective January 1, 2020 95% of the duties of retiring employee, Matt Gedge (then the Project Manager for the Vice Chancellor for Administration and Finance), in addition to her then

6

existing full-time position as the Assistant Director of Administrative Affairs for the Department of Property & Facilities.

26. The September 2019 email stated that Ms. Carballo was assigned the following duties of Mr. Gedge: FEMA related responsibilities; GOHSEP related responsibilities; and ORM related responsibilities. A small piece of Mr. Gedge's responsibilities—institutional records officer responsibilities—were assigned to another employee, Tara Rodrigue.

27. Since Mr. Gedge's retirement, Ms. Carballo has performed (on top of her former duties) nearly all of Mr. Gedge's former duties, including but not limited to the development of disaster-related grant submissions; the defense of new and amended grant submissions; the submission of expenses for reimbursement; the close-out of claims (PWs) and disasters; reporting responsibilities; and ORM coordination—non-disaster related.

28. Like Mr. Gedge during his employment, since his retirement, Ms. Carballo has had (a) primary signatory authority at the institutional level and is delegated by the Chancellor to certify campus-wide submittals and compliance with the FEMA and the state ORM regulations; (b) administrative oversight of the department, including responsibility for oversight and processing of administrative actions which must be routed through the Dean's office or office of the Associate Vice Chancellor for review and general compliance with State, Federal and University regulations, providing advice to the Dean or Associate Vice Chancellor on departmental administrative matters, and interacting with Department Heads or Directors and business managers to implement developed administrative programs and projects; (c) financial oversight of the

department, including development and management of the department's annual budget, oversight of all fiscal affairs of the department, responsibility for advising the Dean or Associate Vice Chancellor for review and general compliance with State, Federal, and University regulations and departmental administrative matters and interacting with Department heads or Directors and business managers to implement developed budgets and fund management; (d) financial and administrative oversight of LSUHSC-New Orleans' FEMA and Governor's Office of Homeland Security and Emergency Preparedness (GOHSEP) Projects and responsibility for directing the implementation and oversight of all federal and state disaster and property insurance claims campus wide; (e) responsibility for interacting and negotiating with FEMA, GOHSEP and other outside agencies to defend grant, insurance, and legal claims on behalf of the University; (f) responsibility for reporting to federal and state agencies regarding the status of all campus disaster and insurance projects, including responding to audit inquiries; (g) responsibility for contracts management and the negotiation and development of contracts; (h) responsibility for conducting and directing special projects and representing the Department on committees and task forces; and (i) responsibility for the direct supervision of an administrative team.

29. In addition, since assumption of Mr. Gedge's responsibilities in January 2020, Ms. Carballo has remained responsible for the same fiscal dean duties that she handled prior to that time. For example, Ms. Carballo has responsibility for (a) financial oversight of the department, including development and management of the department's annual budget, oversight of all fiscal affairs of the department, responsibility for advising the Dean or Associate Vice Chancellor for review and general compliance with State,

Federal, and University regulations and departmental administrative matters and interacting with Department heads or Directors and business managers to implement developed budgets and fund management; (b) administrative oversight of the department, including responsibility for oversight and processing of administrative actions which must be routed through the Dean's office or office of the Associate Vice Chancellor for review and general compliance with State, Federal and University regulations, providing advice to the Dean or Associate Vice Chancellor on departmental administrative matters, and interacting with Department Heads or Directors and business managers to implement developed administrative programs and projects; (c) interacting and negotiating with FEMA, GOHSEP and other outside agencies and entities to defend grant, insurance, and legal claims on behalf of the University; (d) contracts management and the negotiation and development of contracts; (e) conducting and directing special projects and representing the Department on committees and task forces; and (f) the direct supervision of an administrative team.

30. Ms. Carballo's current position of Director of Administration and Disaster Claims requires a Master's degree and 10 years of experience. Likewise, according to their position descriptions provided in response to a public records request, the positions held by Ben Lousteau and Anthony Divincenti as of November 2021 required both a Master's degree and 10 years of experience.

31. In contrast, according to their position descriptions provided in response to a public records request, the other two fiscal deans, Mr. Loupe and Mr. Lasalle's positions require substantially less experience and/or education than Ms. Carballo's position. As

of November 2021, Joseph Lasalle's position required only 3 years of experience and Geremie Loupe's position required only 5 years of experience and a Bachelor's degree.

32. When 95% of Mr. Gedge's responsibilities were assigned to Ms. Carballo, she became responsible for two full time equivalent (FTE) positions at LSUHSC—that of the Assistant Director of Administrative Affairs for the Department of Property & Facilities and that of the Project Manager. In other words, Ms. Carballo was (and remains) required to do the work of two full-time employees, work that was in fact done by two separate employees prior to Mr. Gedge's retirement.

33. In the September 2019 email assigning her Matt Gedge's duties, Mr. Harman stated that "[i]t will be necessary for the Office of Human Resources [Management, or OHRM] to re-evaluate Rayza's and Tara's positions as a result of the reassignment of these responsibilities to see if these additional responsibilities impact their existing classification and compensation structure."

34. Nonetheless, between September 2019 and January 2020, to Ms. Carballo's knowledge, OHRM did not re-evaluate her position or analyze whether the additional responsibilities impacted her existing classification and compensation.

35. Rather, Ms. Carballo assumed Mr. Gedge's responsibilities in January 2020, LSUHSC-New Orleans did not increase her pay based on those additional duties.

36. Ms. Carballo then sought additional compensation based on the substantial additional duties.

37. In response, on February 3, 2020, Sara Schexnayder, Compensation Manager and part of LSU's Office of Human Resource Management (OHRM), recommended an $800 per month increase for six months, after which time the amount and duration of that

increase would be reassessed.

38. The $800 per month increase amounted to approximately 10 percent of Ms. Carballo's salary.

39. The memorandum included a section entitled "Observations[,]" which stated: "If these duties were to become permanent, the increased scope would result in an increase of one grade from the current position."

40. Following the February 3, 2020 memorandum, that temporary $800 per month pay increase was approved by John Harman as well as Keith Schroth, at that time LSUHSC-New Orleans' Vice Chancellor of Administration and Finance, and Larry Hollier, at that time LSUHSC-New Orleans' Chancellor.

41. On May 13, 2020, Ms. Carballo emailed John Harman to ask whether the additional $800 in monthly compensation would be extended when the original six-month period expired on June 30, 2020.

42. Also in May 2020, Ms. Carballo raised issues with Mr. Harman regarding the burden of having effectively two full-time positions—her original position as well as Mr. Gedge's former responsibilities—and stressed the need for her to have accounting support as had been provided to Mr. Gedge in performing his responsibilities. Ms. Carballo has never been provided with the level of accounting support that was provided to Mr. Gedge.

43. In late July 2020, the additional $800.00 per month compensation was approved for six months and was to run through December 2020.

44. However, the additional compensation was erroneously only extended for three months: July, August, and September 2020. This pay increase form was signed by

Jennifer Crisp, Administrative Officer, Office of the Chancellor, along with Mr. Schroth and Mr. Hollier.

45. In October 2020, Cori Higginson, at that time LSUHSC-New Orleans' Director of Human Resources, spoke with Louis Colletta, then the Chief of Staff, and "recommended an additional FTE to be trained in these [the additional compensation] responsibilities and he concurred."

46. In November 2020, Ms. Higginson sent Mr. Colletta an email following up on the previous conversation and stating that the FEMA-related duties (a major portion of Mr. Gedge's former duties) "should be removed from Rayza's workload, as her duties currently equate to two FTEs."

47. Ms. Carballo's paycheck for October 2020 was short by 10 percent, as it did not include the additional $800.00 monthly compensation for Mr. Gedge's former duties which erroneously had been adjusted for only 3 months rather than 6 months. The issue was only corrected when Ms. Carballo raised the issue with Ms. Higginson, Mr. Schroth, Mr. Ball, and Mr. Colletta.

48. In December 2020, Ms. Carballo was promoted and her job title was changed to Director of Administration and Disaster Claims.

49. When Ms. Carballo was promoted to Director of Administration and Disaster Claims, the $800.00 monthly additional pay ended and she received a pay raise amounting to 12 percent of her salary. This brought her annual salary to $108,396.96.

50. In contrast, at his retirement, Mr. Gedge's salary was $186,165.

51. In addition to the instances discussed above, Ms. Carballo has repeatedly requested review by LSU of the salary inequities as compared to Mr. Gedge as well as the male

fiscal deans, and has requested that her compensation, commensurate to the level of responsibility, be adjusted to be comparable to the salary paid to Mr. Gedge and retroactive to the date that she assumed his responsibilities.

52. In contrast to the small pay increases that Ms. Carballo received after assuming Mr. Gedge's responsibilities, seeking additional pay, and eventually being promoted to Director of Administration and Disaster Claims, when male fiscal deans were promoted to director-level positions and/or assumed additional duties within LSUHSC-New Orleans, they received much larger pay increases of 30 percent or higher.

53. For example, Mr. Lousteau was promoted from a Fiscal Analyst to an Executive Director position in 2015 and received a 36.285 percent pay increase, and received another 30.51 percent pay increase due to "Expan/Upgrade Duties" in 2021.

54. Likewise, Mr. Divincenti was promoted from an Assistant Dean to an Associate Dean position in 2014 and received a 33.218 percent pay increase with that promotion.

55. In response to Ms. Carballo's internal complaints regarding pay inequity as compared to her male colleagues, LSUHSC-New Orleans has asserted that her position is not a fiscal dean and that she is in the same group as "other women," specifically including a female employee who does not hold fiscal dean responsibilities and whose responsibilities are limited to supporting, coordinating, and participating in fiscal matters, rather than developing and implementing them.

56. In addition, LSUHSC-New Orleans has taken the position that Mr. Gedge's pay grade is not a good benchmark to compare against, that it is confident in the methodologies used to determine the appropriateness of Ms. Carballo's pay, and that it will not be doing anything further to redress her pay equity complaints.

**EQUAL PAY ACT, 29 U.S.C. § 201, *et seq.* ("EPA")**
**GENDER DISCRIMINATION**

57. All foregoing allegations are incorporated herein by reference.

58. The Equal Pay Act (EPA) prohibits wage discrimination on the basis of sex for equal work on jobs of which require equal skill, effort, and responsibility, and which are performed under similar working conditions. 29 U.S.C. § 206(d).

59. Defendant has discriminated against Plaintiff in violation of the EPA.

60. Between March 2019 and December 2019, Defendant paid Plaintiff, and/or directed that Plaintiff be paid, less than similarly situated male employees performing equal work on jobs the performance of which require equal skill, effort and responsibility and which were performed under similar working conditions, including Ben Lousteau, Anthony Divincenti, Geremie Loupe, and Joseph Lasalle.

61. Beginning in January 2020 and continuing through the present, Defendant has paid Plaintiff, or directed that Plaintiff be paid, less than similarly situated male employees performing equal work on jobs the performance of which require equal skill, effort and responsibility and which are performed under similar working conditions, including Matt Gedge, Ben Lousteau, and Anthony Divincenti.

62. The differential in pay between Plaintiff and similarly-situated male employees was and is not due to any (i) a seniority system; (ii) a merit system; (iii) a system of earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

63. Defendant did not act in good faith and created and perpetuated gender-based wage discrimination in violation of the EPA.

64. The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).

65. As a result of Defendant's gender-based discriminatory policies and practices, Plaintiff has suffered damages, including but not limited to, lost past and future income, compensation, and benefits.

66. By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of the EPA, including lost wages (including back pay, front pay, and benefits), liquidated damages, pre-judgment and post-judgment interest, attorney's fees, costs, and all other and further relief as to this Court appears necessary and proper.

## RELIEF REQUESTED

WHEREFORE Plaintiff requests judgment be entered against Defendant and that the Court grant the following:

    a. A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the EPA;

    b. An injunction and order permanently enjoining Defendant from engaging in such unlawful conduct;

    c. An award of economic damages in an amount to be determined at trial, including but not limited to back pay, front pay, lost benefits, along with compensatory damages;

    d. An award of liquidated damages;

    e. An award of all attorney's fees and costs incurred in litigating this action;

    f. An award of pre- and post-judgement interest; and

    g.  Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled.

Dated: March 22, 2022.

                                  Respectfully submitted,

                                  */s/ Kerry A. Murphy*
Kerry A. Murphy, T.A. (La. Bar No. 31382)
Laura E. Avery (La. Bar No. 35636)
KERRY MURPHY LAW LLC
715 Girod Street, Suite 250
New Orleans, LA 70130
Telephone: (504) 603-1502
Facsimile: (504) 603-1503
Email: kmurphy@kerrymurphylaw.com
        lavery@kerrymurphylaw.com

***Attorneys for Plaintiff***